I hear the next one. And Meisel v. Securities and Exchange Commission. Let's let the courtroom clear before we start talking. Mr. LeRoux, may it please the court. My name is Luke LeRoux. I'm representing John Meisel in this petition to try to secure a whistleblower award for his original, credible, specific information that certainly assisted the SEC in getting significant financial recoveries from people involved in the covered case as well as all of the related cases. And I'm sure that you've familiarized yourself with the Dodd-Frank Act. Obviously, we're familiar with the legislative predicate for that. Whistleblowers were to be awarded to assist the government in locating the information that would help them achieve the goals that were achieved in this particular case and all of the related cases. Our review here is governed by an arbitrary and capricious standard, and we're here to review particularly whether the decision of the agency is supported by substantial evidence. Is that right? Absolutely correct. Yeah, pretty deferential standard. It's deferential, but it does have limitations based on what you've just described. The issues that we raised really focus on the SEC's sole witness, which was Mr. White, who, when the original notice of the anticipated denial came out, issued his original declaration and went through a very interesting litany of the time sequence involved. And after there was a response identifying all of the flaws in that declaration, there was a supplemental declaration attached to the final order that Mr. Meisel had no opportunity to respond to. So we took issue with that. But I think if you look at the time frame here and the very sequence of events, Mr. Meisel actually knew Mr. Hickson from real estate deals going back to 2011-2012. Before you get into that, let me ask you this. Certainly. Would you agree that under the substantial evidence standard of review, if there's a way to read the White declarations as consistent, we have to find in favor of the Commissioner? Is that correct? If you can find them consistent based on the time frames involved, then we submit respectfully that you cannot. I know that's your argument, but if there's a way to read them consistently, that meets the substantial evidence standard, doesn't it? It would if you can reach that conclusion. So the issues that we raised primarily deal with the fact that when the original action was filed against Mr. Abdullah and Mr. Grant and the other participants, Mr. Hickson was completely absent from that case. The reason he was absent is that the SEC did not have the information that Mr. Meisel later provided them. If you look at what's referred to either as the Gaynor spreadsheet or the Gaynor ledger, things of that kind, it's not a spreadsheet. It's not a ledger. It's just a 42-page document that has a bunch of notes, shorthand, confusing entries. It's difficult, and I think even the forensic expert, Mr. Ryba, when he attached that and these were exhibits to the original covered action complaint, he identified that there were a lot of issues there. Had they known who Mr. Hickson was and had the SEC known about Quest Innovation LLC, there's no doubt that Mr. Hickson would have been named as a defendant, and it's interesting that the SEC . . . All right, so it seems to me it's not clear that there's an inconsistency between White's original declaration and the supplemental declaration. It's one thing for White to say when he learned of something versus when the staff learned of something. Understood. As I understand it, although it's a bit confusing, other members of the Commission staff learned about Hickson and Quest before White made his independent discovery, corroborating that information on August 18th. But if the staff already knew, then nothing in the original declaration is false or necessarily inconsistent, and the agency, the Commission, had substantial evidence on which to base its decision. I didn't mean to interrupt you if I did. You're free to go. The issue here is they knew of Hickson. They knew of Quest. They knew nothing of the connection between the two. Again, if you go back to the Gaynor Ledger, I think there are several references to a lowercase Quest. Nowhere does it say Quest Innovation LLC. Hickson's never referred to as Hickson. It's Hicks. But they are not aware of that connection. And to say they knew about one or the other doesn't make the connection that they need. Mr. Meisel knew that Mr. Hickson had created Quest Innovation LLC, but solely through the principal ownership of his girlfriend, Ms. Rollison. The Secretary of State and the records related to Quest Innovation LLC had no mention of Mr. Hickson, and obviously the SEC knew nothing about that connection or he would have been charged. Mr. Hickson was a financial advisor. He was one of the sources of all of the unfortunate investors that participated in this Ponzi scheme. And we don't see any of the development of that connection, the important connection, until after Mr. Meisel speaks with SEC Attorney Mr. Lehman on January 7th of 2014. So they make the comments that, well, we knew this and we knew that. But what's missing from that declaration is we knew this was connected to that. They talk about the checks that they found. There were, I think, 135 checks through the bank account held by the entity that was participating in the Ponzi scheme. And those checks went to not only people that were deriving the negative income from the process, but also to the investors. That checking account was there to forego and basically promote this Ponzi scheme. So all of that information, even though it was known to them, there's still no connection. I thought that the address listed for Quest on the bank statements was the same address where Hickson lived. Is that right? It may well have been. But that doesn't change the fact that Ms. Rolison is the only one on the books and records. And there's no mention. Rolison and Hickson lived at that address, right? I'm sorry? Hickson and Rolison lived at that address, didn't they? They did. But even in light of the address issue there, there's no indication that they made the connection. I mean, to me, the most telling aspect of this entire case is that Mr. Hickson never got connected to any aspect of the original case until after Mr. Meisel had shared the information with the SEC. And he particularly gave all the information that he could to Mr. Lyman. Now, even though they may have had some indication, there may have been some documentation that referenced Mr. Hickson. There may have been some documentation that referenced Quest. Even if they had checks that said the address, at that point in time, before Mr. Meisel shared his information, they had no idea whether Quest was an investor or a participant. So while they had that information, if they actually had enough to base some concern that Hickson was involved in the Ponzi scheme, he would absolutely have been named as a defendant in the original covered action. Mr. Leroux, you also argue that Meisel assisted the receiver. How does that qualify him as a whistleblower? As I read the statute and the regulations accompanying the statute, the whistleblower must provide information to the commission. How does providing information to a court-appointed receiver constitute providing information to the commission? Here's the connection. The only reason that that receiver took responsibility to participate in this case was in a motion filed by the SEC to have him appointed. And the receiver, in the order that was prepared by the SEC and presented to the trial court judge to approve his assignment, it specifically says that everything he has to do is with the input, the guidance, the participation of the SEC. We view that receiver predicated on the language of that order as essentially an agent of the SEC. And what Mr. Meisel did is he felt that working with the receiver would assist in gaining the financial benefit generally to the SEC as part of the money that really goes through whatever it was. The problem that you have here is the law has said for many, many, many years in many different fora that a receiver is an arm of the court, not an arm of an administrative agency. And that's what you have to get around because no matter how helpful your client may have been to the receiver, it looks to me like the receiver doesn't fall within the ambit of the statute. Congress drew the statute the way it chose, and it said you got to help the commission, not a court-appointed receiver. And you're simply saying in some context the receiver can be the functional equivalent of the commission, but it's a hard argument to make given that the receiver draws his or her authority not from the commission but elsewhere. And I understand exactly what you're saying, but from our perspective, the dramatic distinction is the language in the order. While the receiver may be appointed by the court, the order states that the receiver does nothing without the input, the approval. It's in the record in the order. I think it was an order from... I think we understand that argument. Okay. Mr. O'Rourke, you've saved five minutes for rebuttal. Let's hear from Mr. Silberman. Thank you for the privilege. Good morning. May it please the court, Stephen Silberman for the commission. Mr. Miser was not eligible for the whistleblower award because he did not provide information to the commission that led to the success of the covered action. He first provided information to the commission a month after the covered action was filed, and all of the information he provided to the commission was already known to the commission, and it concerned an individual who was never a defendant in the covered action. Mr. Miser's information did not assist in litigating the covered action, and the commission reasonably concluded that he was not eligible for a whistleblower award. What do you say about his argument about the inconsistency of the declaration? Right. I'm not sure I understand what the alleged inconsistency is, Your Honor. If you look at Supplemental Declaration, Paragraph 6, it states that the staff first became aware of Hickson and Quest, as well as Hickson's connection to Quest, by March and April of 2014. Then Declaration Paragraph 9 says that Mr. White learned through investigative efforts that he had admitted to an investor that Quest was owned by him and that Quest had been used to pay fees, receive fees from KGTA. So the distinction, Your Honor, is that on the one hand, the commission had already learned by March and April of 2014 that Hickson was connected to Quest, and on the other hand, months later, the commission received information that Hickson admitted to an investor. There's sort of additional evidence in support of this, admitted to an investor, that he had used Quest and that he was connected to Quest and that Quest had received fees. If they're not inconsistent in the way that you've just explained, then we're back to Judge Pryor's point that the substantial evidence standard would require that we deny the petition. That's correct, Your Honor, and that's the commission's factual determinations. I mean, that's the heart of Mr. Miles' objection is attacking the factual findings underpinning the order, and the commission's order in this case was supported by two declarations from the primary enforcement attorney assigned to the covered accident, and this court recognized in Granzatti that declarations are sufficient to meet the substantial evidence threshold. Yeah, so the commission credited them, and then we're left with the point about the receiver, which, as Judge Marcus explained, the receiver is a court officer, and the statute does not appear to permit a whistleblower award because of information provided to a receiver as opposed to the commission itself. That's correct, Your Honor. That can be found in Section 21FA6 as well as 21FB1, that the information must be provided to the commission in order to be a whistleblower claim. That's consistent with Congress's indication that they wanted individuals to report evidence of security violations to the government, and so that's in the text of this statute, and there's nothing in this order. This order is not unusual, this receiver-supporter in any way. It does reference at all times it leaves discretion to the receiver, or actions have to be approved by the court otherwise, like a typical receivership. And I'd just like to respond to the repeated suggestion that if the commission had known about Mr. Hickson, then he would have been charged in this case. The commission, again, as provided multiple times in the White Declaration, was aware of Mr. Hickson and did not charge him with any securities law violations, and that flows from the fact that he's a very tangential figure in this Ponzi scheme. He referred one investor to Mr. Gaynor. Now, that investor did make a substantial investment, and he referred individuals. He made another significant investment, more additional investment. But he's a tangential figure, and the commission opted not to charge him. And, of course, the commission at any time could have amended its complaint, or filed an amended complaint to add a defendant if they had so chosen. If Mr. Mizell provided information about assets to the receiver, and the receiver then provided that information to the commission, wouldn't Mizell still be the original source of the information? He might be the original source, but he would still run afoul of this statute and that he would need to provide the information to the commission. What about Rule 21F4B5 that says the commission will consider you to be an original source of the same information that we obtained from another source if the other source obtained the information from you? There's no original source question in this case. The question is whether he provided the information to the commission for an action brought by the commission. We're not questioning whether he provided original information or whether he is an original source. The issue is that he did not provide the information to the commission in support of an action brought by the commission. So you're contending that he cannot tell, for example, the receiver who then tells the commission. He has to tell it directly to the commission. If there is a provision, you can tell the receiver or other individual the information and then he still needs to provide the information to the commission. In other words, he can still be the original source providing original information to the commission so long as the commission is not otherwise aware of that information and it is not publicly available information. So he could go tell his friends. He could go tell certain entities laid out in the rules and statutes. He could tell certain safe harbors that allow him to tell other federal agencies and whatnot as long as he gets to the commission before the commission becomes aware of that information and, again, it's not publicly available. Again, we're just confined by the text of the statute that he must provide the information to the commission in order to be eligible or qualify as a whistleblower. If there are no further questions, Your Honor, I respectfully request that the court affirm the commission's order. Thank you. Okay. Thank you, Mr. Silverman. Mr. Rowell? Responding to those arguments, first of all, I just want to make clear that it's not so much the issue of the covered action alone. I think the statutory language is that you give original information, specific, credible, to inquire concerning different conduct as part of a current examination or investigation. Mr. Meisel got on PACER, found all those records. The records were unclear, and it was that information that helped them make that connection. Now, the reason that this ties into that action is that if you look at what the interview with Mr. Hickson was, Mr. Hickson's interviewed both by the SEC and the FBI. He denies any connection. At that point, there's no knowledge that he has any connection to Quest at all when he was first interviewed by both of the agencies, and later on, after Mr. Meisel gives them the information to connect the two, what happens is they end up charging Mr. Hickson with making false statements. That's related. They all come from the same nucleus of operative facts. All of these cases came from the same Ponzi scheme that was the origination of the covered action. So when you go after Mr. Hickson, and I think, again, we've laid this out with the time sequence involved, when Mr. Hickson gets charged, when Mr. Hickson's dealing with the receiver, and I'll talk about that in just a second, Mr. Hickson ends up putting up a pretty good fight. But when Mr. Hickson folds, Mr. Gaynor, who had up to that point not wanted to accept any responsibility, when he knew that Hickson, the financial advisor that gave him more than one investor, and I think if you look at the record, it was significantly more than one investor. I believe somewhere in the record it shows that he was about 60% of the people that were funneled because he was a financial advisor bringing business to the Ponzi scheme. The issue there is that once Hickson folds, based on the information given to them, they would not have been able to charge him with false information had Miesel not given that to the SEC. They would have never known that Mr. Hickson was lying. And to say that they're going to connect that to Quest because of a check from an account that had an address on it, with all due respect, I think that presumes a much more significant level of investigation, none of which occurred before Mr. Miesel gave the information to the SEC. The other issue that I really want to explore here is that as far as your identification of providing information to a third party that then gets to the SEC, I can't stress enough the language in the order. Now, I know the receiver's independent, but we put it in there, and it's on page 11 of our brief. It says that the order authorized the receiver to investigate and prosecute claims but was only able to recover and or conserve receivership property, and this is underlined, in consultation with SEC counsel. So whatever independent stature the order may have given him, the language in the order inextricably intertwines the SEC with the conduct of the receiver. And we cite the Kilgore case. It doesn't prevent, and it says when you're talking with the SEC, it does not prohibit the receiver from acting as a representative and conduit of information by which the SEC benefits. The SEC benefited dramatically from the efforts of this receiver. The receiver succeeded largely because of a great deal of information given to him by Mr. Miesel. And I think even in the statement that was attached to the original response to the suggestion that the award be denied, the receiver describes Mr. Miesel's assistance in great depth. It talks about how he would never have been able to attain this information. And throughout the record, it shows how difficult it was to deal with the participants in this Ponzi scheme. Mr. Miesel provided that critical key, that critical connection, to give the SEC the ability to target Mr. Hickson, that theretofore they didn't have the information to do so. So based on that, it's our respectful position that whatever assistance was given to the receiver, ultimately that benefited the SEC, the conduit concept in the Kilgore case. And I'm happy to answer any additional questions the court may have, and I'm, again, grateful for the privilege of being here today. Thank you, Mr. Rowe. I think we have your case and understand your argument. We're going to move to the next one. Very good. Thank you very much.